UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAN VAN DAN, | No.  1:26-cv-00629 DJC SCR |
| Petitioner, | |
| v. | ORDER AND |
| WARDEN OF GOLDEN STATE ANNEX, | FINDINGS & RECOMMENDATIONS |
| Respondent. | |

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.[1]  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I.      Factual and Procedural History**

Petitioner is a Vietnamese national who is currently detained in the Golden State Annex Immigration Detention Facility within this judicial district.  ECF No. 1 at 2.  Petitioner fled religious persecution in Vietnam in 2024 and came to the United States to seek asylum.  Id. at 5-8.  He was apprehended and detained by U.S. immigration officials on January 6, 2025, near Otay Mesa, California, and placed into expedited removal proceedings.  Declaration of Carrie LeRoy

---

[1]  Petitioner has notified the Court that his correct full name is Van Dan Tran.  ECF No. 13 at 7 n.1.  The undersigned will direct the Clerk of the Court to update the Docket accordingly.

1

("LeRoy Decl.") ¶ 3, ECF No. 13-1 at 2.  DHS issued petitioner a Notice to Appear on or around April 10, 2025, indicating that an asylum officer determined he "demonstrated a credible fear of persecution or torture" if forced to return to Vietnam.  Id., Exh. A., ECF No. 13-2 at 2.  The Notice also indicated DHS vacated the expedited removal order, administratively charged petitioner under INA §§ 212(a)(7)(A)(i)(I) and (a)(6)(A)(i), and placed him in removal proceedings.  Id.  On June 8, 2025, Petitioner timely filed applications for asylum and withholding of removal.  Id., Exhs. C, D, ECF Nos. 13-2, 13-3.  Petitioner has never been arrested for or charged with a crime and has no criminal history.  Id., Exh. B, ECF No. 13-2 at 11.

On January 26, 2026, proceeding pro se, petitioner filed the instant § 2241 petition challenging his "ongoing prolonged detention" without bond under the Due Process Clause of the Fifth Amendment.  ECF No. 1 at 18-19, ¶¶ 46-49.  At that point, DHS had detained petitioner without bond for almost thirteen months.  Petitioner expressed frustration that his immigration court hearings are "repeatedly changed and postponed" without explanation.  Id. at 8.  Petitioner also reported unsanitary conditions, poor medical services, frequent fights, and drug use in the Golden State Annex.  Id.  By way of relief, petitioner requests a bond determination hearing by a neutral decision maker.  Id. at 19.  The assigned District Judge appointed petitioner counsel on January 27, 2026.  ECF No. 4.

Respondent asserts that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) while his asylum application is pending.  ECF No. 12 at 1.  Respondent relies on the Supreme Court's decision in Jennings v. Rodriguez, 583 U.S. 281 (2018), for the proposition that § 1225(b)(1) "mandate[s] detention of applicants for admission until certain proceedings have concluded," which is when "immigration officers have finished 'consider[ing]' the asylum application."  Id. at 2 (quoting Jennings, 583 U.S. at 283, 287).  Relying on the Supreme Court's ruling in Demore v. Kim, 538 U.S. 510 (2003), respondent further argues that petitioner's prolonged mandatory detention during civil removal proceedings is "constitutionally permissible."  Id. at 2-3 (quoting Demore, 538 U.S. at 530-31).  Although Demore contemplated a "limited period" of mandatory detention, respondent maintains the Supreme Court still rejected a rule requiring a bond hearing within a fixed time.  Id. at 3 (citing Demore, 538 U.S. at 531).

2

In the counseled reply brief, petitioner acknowledges § 1225(b)(1) governs his detention but insists neither Jennings nor Demore foreclose "a challenge under the Fifth Amendment Due Process Clause as applied to a petitioner in his individual circumstance." ECF No. 13 at 10-11 (citing Demore, 538 U.S. 510, 532-33 (Kennedy, J., concurring); Nielsen v. Preap, 586 U.S. 392, 420 (2019)). Petitioner's as-applied constitutional challenge to his detention involves both substantive and procedural components. ECF No. 13 at 11-12. Petitioner argues that his prolonged detention violates substantive due process because it bears no reasonable relation to the government's interests in preventing flight or danger. Id. at 11. In support of his procedural due process challenge, petitioner submits that the test announced in Mathews v. Eldridge, 424 U.S. 319 (1976), should be applied. According to petitioner, each of the three Mathews factors weighs in his favor and "establish[es] that Petitioner is entitled to an evidentiary hearing before a neutral adjudicator." Id. at 17 (citations omitted). Petitioner then goes even further, and requests immediate release based on the Executive Branch's "unprecedented" attacks on the immigration courts that have transformed them from a neutral tribunal into "an extension of DHS' deportation detention operations." Id. at 18-21.

II.    **Legal Standards**

A.  **Constitutional Standards**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). This provision "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). Freedom from imprisonment or physical restraint is a "fundamental" right at the "core of the liberty protected by the Due Process Clause." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is

3

narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

### B. Statutory Immigration Framework

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The only statutory mechanism for release from detention for an asylum applicant

4

apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

### III.    Analysis

#### A. Petitioner Has a Protected Liberty Interest Against Unjustified Detention

This case turns on the scope of constitutional protections afforded to a non-citizen who has not been admitted into the United States but who has a pending claim for asylum that an asylum officer has been determined to be credible. ECF No. 13-2 at 2. A non-citizen's due process rights to liberty from unjustified detention are well established. ECF No. 13 at 10-11. "[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [noncitizens] were not protected by even the substantive component of constitutional due process, … we do not see why the United States government could not torture or summarily execute them. … [W]e conclude that government treatment of excludable

[noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").

Respondent appears to acknowledge that petitioner possesses due process rights beyond the procedures authorized by § 1225(b)(1) but takes the position that his prolonged mandatory detention without bond is constitutional under Jennings and Demore.  ECF No. 12 at 2-3.  For support, respondent points to petitioner's asylum proceedings as a "definite termination point" that distinguish his mandatory detention under § 1225(b) from the "indefinite" and "potentially permanent" detention pursuant to § 1231(a)(6) at issue in Zadvydas.  Id. at 4 (citing Demore, 538 U.S. at 528-29).  Respondent further argues that after Jennings, the judges of this judicial district have "repeatedly refused to identify a specific time period after which a noncitizen's [mandatory] detention will be considered presumptively violative of due process."  Id. at 3 (collecting cases).

Based on the bona fide nature of petitioner's asylum claim, petitioner is subject to a prolonged period of detention as his individual case is heard first by an immigration judge ("IJ") and then, potentially, by the BIA and the Ninth Circuit Court of Appeal if either party pursues further review.  While respondent is correct that this process will at some point have a "definite termination point," there is no clear end in sight to petitioner's detention, which has now lasted more than fourteen months.  See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent").  Moreover, as petitioner notes, mandatory detention statutes like § 1225(b)(1) and their implementing regulations are subject to constitutional limitations on an as-applied basis.[2] See, e.g., Nielsen, 586 U.S. at 420; Demore, 538 U.S. at 532-33 (2003) (Kennedy, J., concurring).

_____

[2] Respondent's reliance on Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) to support the argument that petitioner's due process claim is "foreclosed by statute," ECF No. 12 at 2, is also unavailing because a district judge recently vacated that ruling pursuant to the Administrative Procedure Act.  Maldonaldo Bautista v. Santacruz, No. 5:25-cv-1873 SSS BFM, 2026 WL 468284, *10 (C.D. Cal. Feb. 18, 2026).  APA vacatur is universal and applies with equal force here.  See Nat'l TPS All. v. Noem, 773 F. Supp. 3d 807, 867 (N.D. Cal. 2025) (holding APA vacatur of DHS decisions concerning Venezuelan temporary protected status holders were "nationwide in scope" and distinguishing APA vacatur from nationwide injunctions), aff'd, 150 F.4th 1000 (9th Cir. 2025); Texas v. United States, 40 F.4th 205, 229 n.18 (5th Cir. 2022) ("reject[ing] DHS's contention that the nationwide vacatur is overbroad[;] [i]n the context of immigration law, broad relief is appropriate to ensure uniformity and consistent in enforcement").

Accordingly, the undersigned finds that petitioner has a protected liberty interest and may invoke the Due Process Clause to seek protections against unjustified detention in his individualized circumstances.

### B.  Framework for Evaluating Petitioner's Claim to a Bond Hearing

Petitioner argues that he is entitled to a bond hearing under the procedural due process framework in Mathews, 424 U.S. 319.  The court applies that framework here and concludes that a prompt bond hearing is necessary, at which bond hearing respondent would bear the burden demonstrating continued detention is warranted.[3]  See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention); A.E. v. Andrews, No. 1:25-cv-0107 KES SKO (HC), 2025 WL 1424382, at *4 (E.D. Cal. May 16, 2025), adopted by 2025 WL 1808676 (E.D. Cal. July 1, 2025) (applying Mathews in case involving § 1225(b)(1) detention to order a bond hearing before an immigration judge); Maksim v. Warden, Golden State Annex, et al., No. 1:25-cv-0955 SKO (HC), 2025 WL 2879328 (E.D. Cal. Oct. 9, 2025) (same).

### 1.  Private Interest

Turning to the first Mathews factor, petitioner has a private interest in avoiding prolonged detention without a bond hearing.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690.  Petitioner has been detained more than fourteen months.  Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged.  See

---

[3]  While the procedural due process framework is sufficient for resolving this petition, the undersigned notes that substantive due process would also dictate that a bond hearing is necessary to test whether further prolonged detention is justified.  See Padilla, 704 F. Supp. 3d at 1172 (recognizing need for bond hearings under substantive due process because "non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); see also Doe v. Beccera, 732 F. Supp. 3d 1071 (N.D. Cal. 2024) (applying five-factor test "regarding detention before criminal trial and civil commitment proceedings [to determine] whether continued detention" under another mandatory detention statute, 8 U.S.C. § 1226(c), "violates substantive due process").

Zadvydas, 533 U.S. at 701.  An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Lopez v. Garland, 631 F.Supp.3d 870, 880 (E.D. Cal. 2022) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).  Further, respondent did not offer evidence to rebut petitioner's claim that he is not responsible for the delays in his asylum case that have prolonged his detention.  Petitioner also offers credible information tending to show harsh and unsanitary conditions at the Golden State Annex that have contributed to a COVID-19 outbreak and scabies infestation.  ECF No. 1 at 8; LeRoy Decl. ¶ 7, ECF No. 13-1 at 3.  All of these circumstances combine to tip the first Mathews factor strongly in petitioner's favor.

### 2.  Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  Mathews, 424 U.S. at 335.

Here, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all."  Maksim, 2025 WL 2879328, at *5.  "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial."  Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011), abrogated on other grounds by Johnson v. Arteaga-Martinez, 596 U.S. 573, 582 (2022); see also, Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"); Diop v. ICE, 656 F.3d 221, 235 (3d Cir. 2011) (detention of an non-citizen under mandatory detention statute for "nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause").  Against this background, a bond hearing is a critical procedural safeguard because it provides both the noncitizen and the government with an opportunity to present witness testimony or evidence and be heard before a neutral adjudicator.  This factor also favors petitioner.

8

### 3. Government's Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335.

Respondent asserts that any due process owed to petitioner is diminished by "the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens." ECF No. 12 at 4 (quoting Rodriguez Diaz, 53 F.4th at 1205-06). Indeed, "the government has a strong interest in effecting removal, and in protecting the public from danger." Maksim, 2025 WL 2879328, at *5 (citations omitted). "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and quotation omitted). Thus, "[p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-CV-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)). Moreover, petitioner's individual request for a bond hearing involves a minimal fiscal and administrative burden. In sum, this factor also weighs in favor of petitioner.

In light of this Mathews analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted and respondent be ordered to provide him a bond hearing before an IJ within fourteen days where the IJ must order petitioner released unless the IJ finds that he is a risk of flight or danger to the community by clear and convincing evidence. See Maksim, 2025 WL 2879328, at *6 (adopting clear and convincing evidence burden in similar circumstance); Singh, 638 F.3d at 1204 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake ... are both particularly important and more substantial than mere loss of money.").

The undersigned has also considered petitioner's request to exercise the Court's "equitable discretion in habeas" and grant petitioner's immediate release. ECF No. 13 at 20. While petitioner's concerns are well taken, he has not identified authority to support immediate release.

9

Petitioner points to <u>Singh v. Warden of Golden State Annex Det. Facility</u>, No. 1:25-cv-1689 EPG HC, 2026 WL 171952, at *7 (E.D. Cal. Jan. 22, 2026), but there the judge ordered release after concluding petitioner's prolonged detention under § 1226(a), a discretionary detention statute, violated due process.  Petitioner also cites <u>Valdez v. Joyce</u>, 803 F. Supp. 3d 213, 219 (S.D.N.Y. 2025), which similarly involved detention under § 1226(a) and is unconvincing for the same reason.  Accordingly, the undersigned finds that a prompt bond hearing before an IJ is the appropriate remedy here.

**III. Conclusion**

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall update the Docket to reflect to petitioner's correct full name, Van Dan Tran.

In addition, IT IS HEREBY RECOMMENDED that:

a.    Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

b.    Respondents be ordered to provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of issuance of this order.

c.    Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

d.    If petitioner is granted release on bond, respondents shall return all of petitioner's documents and possessions at the time of release.

e.    Judgement be entered in petitioner's favor and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See <u>United States v. Barney</u>, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets

the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 6, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

11